Merrimack,
June 29, 1933.

BERTHA GIGUERE
*v.*
BOSTON & MAINE RAILROAD AND LAWRENCE GRINNELL.

EDWARD GIGUERE *v.* SAME.

LAWRENCE GRINNELL *v.* BOSTON & MAINE RAILROAD.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the Gigueres.

*Murchie, Murchie & Blandin* and *Foster & Lake* (*Mr. Alexander Murchie* orally), for Grinnell.

*Demond, Woodworth, Sulloway & Rogers (Mr. Jonathan Piper* orally), for the Boston & Maine Railroad.

WOODBURY, J. These actions arose out of a collision between a street car of the railroad, hereafter called the defendant, and an automobile owned and operated by Grinnell. Bertha Giguere was a passenger on the street car. She is suing for personal injuries; her husband, Edward, for loss of *consortium.*

At the time of the collision the street car was proceeding in a southerly direction at a place on its right of way north of Concord where the tracks run practically parallel with and about six feet east of the Daniel Webster highway. Grinnell was operating his car along that highway in a northerly direction in a line of cars. The automobile ahead of Grinnell stopped suddenly. Grinnell applied his brakes, but finding that he could not stop soon enough to avoid striking the automobile ahead, swerved to his right onto the car tracks where he was struck by the south bound car.

I. The jury was instructed as to the doctrine of the last clear chance. It appears to be conceded that the doctrine was properly included in the charge and that it was correctly and clearly explained to the jury. The defendant's contention is that, although the doctrine applied in the actions between Grinnell and the railroad, it did not apply in the actions in which the Gigueres are plaintiffs. It contends that the charge confused the jury to such an extent that they applied the doctrine in the actions of the Gigueres against Grinnell in such a way as to relieve him from liability to them, leaving the whole burden of defence upon the railroad. The charge read as a whole does not bear out this contention. The jury was instructed in terms that the defendant made no claim that Mrs. Giguere was guilty of contributory negligence. The instruction on the last clear chance was so worded that the jury must have understood that the doctrine applied only in cases in which both parties were charged with negligence. Under these circumstances the jury could not have failed to limit the application of the doctrine to the action of Grinnell against the railroad in which case alone, the negligence of both parties was in issue.

II. The evidence indicated that the motorman of the car, at some time before impact, left his controls and stepped back into the body of the car. It also appeared that the construction of the car was such that, when he did so, the electric power to the motors was automatically shut off and the brakes automatically given the emergency application. The defendant requested the following instructions:

"4. There is no evidence in the case from which you can find that the failure of motorman Burroughs to remain at his controls after setting the air brake in emergency in any way contributed to cause the accident.

"If instruction four is not given, the defendant railroad requests the following.

"5. If you find that motorman Burroughs set the air brakes in emergency at some time before the collision the railroad then cannot be held liable for his failure to stay at his post after so setting the air brakes."

These requests being in the alternative, giving either one in substance would be compliance with the request.

The court charged on this point as follows: "If you find that he seasonably set the air brakes to their full capacity, there is no evidence to indicate that it was negligent for him to then leave his post, if you find that a reasonable man under the same circumstances would have done the same as he did."

The requested instructions are predicated on the proposition that after the motorman left his post there was nothing he could have done to prevent the accident or minimize its consequences. The instruction given left it to the jury to say whether or not a reasonable man would have quit his post under the circumstances, and by inference permitted the jury to find that had he stayed at the controls longer than he did, he might have done something to avert the accident or minimize its consequences.

There is testimony in the record from which it might have been found that the air brakes were given the emergency application at least one hundred feet before impact and that, at that time, the motorman left his controls and stepped back into the body of the car. It also could have been found that the car did not appreciably slacken speed in the last one hundred feet before the collision. On this evidence the jury could find that, although the brakes were applied "to their full capacity," they were not in proper condition, and that due care required the motorman to remain at his post and make use of the hand brake or reverse, both of which means were available to control the speed of the car, at least until the moment of impact. On the basis of this testimony it could be found that he left his post before exhausting all possible means of avoiding the collision or its consequences. His conduct in quitting his post, therefore, is to be measured by the standard of reasonableness. The requested instructions were properly denied.

III. The remaining exceptions deal with the propriety of certain portions of the argument on behalf of Grinnell. The defendant objected and excepted generally to the following argument: "... Mr. Bennett was on the car and Mr. Bennett saw the automobile not when it came out from the road and down on the bank, but after it got onto the track ...." The witness Bennett testified as follows: "Q. Just tell what you saw? A. Well, I saw him turn out. Q. Which way first? A. To the left. Q. Then what? A. The next thing I saw was the machine out on the track." The most that can be said in favor of the exception is that the argument does not state all that the witness said upon the point. Although there may be circumstances when such understatement is objectionable, this does not appear to be one of them. In any case, this objection is not presented for consideration in this court by a general exception.

A witness, Allen, a passenger on the street car, testified that he first saw the automobile when it was on the car track, and that, at that time, the street car was fifty to seventy-five feet north of a certain driveway referred to in the testimony. He also testified that at that time the street car and automobile were one hundred to one hundred and fifty feet apart. Immediately following this testimony, in answer to the interrogatory, "What did you see the motorman do?", he replied, "I saw him move his left hand, do something, and then run back beyond me and tell everybody to sit tight." Mr. Murchie, in reference to Allen's testimony argued as follows: "The electric car, he said at that time, when he saw the automobile first, and that was not when it left the highway but after it was on the track, he said when he saw the automobile, it was on the track and the electric car was then fifty to seventy-five feet north of the driveway, and the motorman shifted his left hand and ran back in, did something with his left hand and ran back into the car immediately ..." Upon objection to the use of the word, "immediately," it was withdrawn and the jury requested to disregard it. Exception was then taken generally and allowed by the court. The argument, as corrected, was clearly warranted by the evidence. That the witness testified differently on cross-examination does not invalidate the argument. *Chatman* v. *Railroad, post,* 317.

The lever which operated the hand brake was used, by putting it in a different position, to open and close the doors. The motorman testified that he did not leave his post until the doors of the car opened, and that this occurred at the time of impact. There was testimony from other witnesses that he went into the body of the car

one hundred feet before the impact. The motorman testified that he put the lever into the emergency brake position about one hundred feet before the collision. In the collision, the air pipe controlling brake and doors broke, and permitted the doors to open. Counsel for Grinnell argued from this that the motorman was in error when he said he applied his emergency brake one hundred feet before impact. He argued that due to the excitement of the moment the motorman put the control lever in the position to open the doors instead of applying the brake, and then retreated into the car before the collision. The jury were at liberty to accept or reject the testimony of any witness in whole or in part. They could have accepted or rejected testimony in such a way as to arrive at the conclusion urged upon them in argument, and, consequently, the inference was warranted.

The defendant's exceptions to the refusal of the court to grant its motions for nonsuits and directed verdicts appear to be without merit.

The other exceptions taken by the defendant have not been pressed and are considered to have been waived.

*Judgments on the verdicts.*

All concurred.